CANNERY WAREHOUSEMEN, FOOD PROCESSORS, DRIVERS AND HELPERS FOR TEAMSTERS LOCAL UNION # 748, Petitioner-Appellant,

v.

HAIG BERBERIAN, INC., a Delaware Corporation, Respondent-Appellee.

No. 76–3077.

United States Court of Appeals, Ninth Circuit.

June 30, 1980.

Arthur V. Azevedo, Sacramento, Cal., for petitioner-appellant.

Robert E. Murphy, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for respondent-appellee.

Before CHOY and WALLACE, Circuit Judges, and GRANT,* District Judge.

WALLACE, Circuit Judge:

This case presents a direct conflict between an order of the National Labor Relations Board (Board) and the prior award of an arbitrator acting pursuant to a valid collective bargaining agreement. The district court gave precedence to the Board order by refusing to enjoin noncompliance with the arbitrator's award. We affirm.

## I.

Haig Berberian, Inc. (Company), operator of several almond, walnut, and apricot pit processing plants in the City of Modesto, California, has recognized Teamsters Local No. 748 (Teamsters) as the exclusive bargaining representative of its employees since 1960. In 1974 the Company commenced construction of a new processing facility outside Modesto in an area not previously covered by the Company-Teamsters collective bargaining agreement. While construction of the new facility was still in progress, the Teamsters and Company entered discussions concerning representation of employees at the new facility. No agreement was reached, and the Company proceeded to employ non-Teamsters at the new plant site. Further unsuccessful negotiations led the parties to submit the dispute to arbitration, an arbitrator was selected, and hearings were scheduled for early 1975.

One week before arbitration, the International Association of Machinists and Aerospace Workers (IAM) filed a petition with the Board seeking certification as the exclusive bargaining representative of the new facility's employees. This second claim to representative status led the Company to file a petition with the Board seeking resolution of the conflicting representation claims. The IAM and Company petitions were later consolidated for one representation hearing before the Board.

Simultaneous to its filing of the Board petition, the Company filed a complaint in federal district court to enjoin the scheduled arbitration. At hearings on this requested injunction the Company and Teamsters agreed by stipulation to defer the scheduled arbitration and to submit the issue of arbitrability to the district court for decision. On April 10, 1975, the district court denied the Company's injunction request and directed that the Company and Teamsters arbitrate. That directive was later affirmed by this court.

Arbitration proceedings were held on May 9 and 10, 1975, in Modesto. The subject of the arbitration was the Teamsters' claim, filed with the Company during the previous unsuccessful negotiations, that the collective bargaining agreement applied to the new plant site and that the union security clause therefore required that all workers at the new site become Teamsters. On August 27, 1975, the arbitrator issued his decision sustaining the Teamsters' grievance and finding that the new facility came within the coverage of the collective bargaining agreement.

Meanwhile, consideration of the consolidated representation petitions was in progress before the Board. The Teamsters, having successfully intervened in the Board action, requested that the Board grant a continuance to await the outcome of the court-ordered arbitration, then only a few weeks away. That request was denied immediately by the Regional Director and on appeal by the Board, and a similar request was denied at the representation hearings in late April and early May 1975. The

* Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting by designation.

Board took the consolidated petitions under consideration and rendered a decision in March 1976, approximately ten months after the hearings had ended and six months after the August 1975 arbitration decision in favor of the Teamsters. Although the Board's Regional Director considered the arbitrator's August decision on a motion by the Teamsters to reopen the record, he nevertheless decided that the new plant was not covered by the Teamsters' collective bargaining agreement and that an election was appropriate. The decision was affirmed by the Board on appeal, and an election was held in November 1976, at which the new plant employees voted against unionization.

Prior to the Board decision, and in response to the Company's refusal to comply with the arbitrator's award, the Teamsters brought this action in federal district court to affirm the award and enjoin further Company disregard thereof. The district court dismissed the Teamsters' action, holding that the Board decision takes precedence over the arbitration award. It is that dismissal which is appealed by the Teamsters.

Two arguments are made to us by the Teamsters. First, they contend that the Board erred in refusing to defer to the arbitrator's decision as required by Board guidelines and precedents. Second, they contend that because arbitration was undertaken pursuant to stipulation of the parties and an order of the federal court, and because federal labor policy favors settlement of industrial disputes through arbitration, the arbitrator's decision overrides the subsequent Board decision.

## II.

■ By contending that the Board erred in refusing to defer to the arbitration award, the Teamsters request us to review the propriety of a Board representation decision. Normally, such a decision may not be reviewed by federal courts because a Board representation decision is not considered a reviewable "final order" within the meaning of section 10(f) of the National Labor Relations Act (Act), 29 U.S.C. § 160(f). *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964); *AFL v. NLRB*, 308 U.S. 401, 407–11, 60 S.Ct. 300, 303–304, 84 L.Ed. 347 (1940). *See also Smith Steel Workers v. A. O. Smith Corp.*, 420 F.2d 1, 6 (7th Cir. 1969); *Groendyke Transport, Inc. v. Davis*, 406 F.2d 1158, 1163–64 (5th Cir.), *cert. denied*, 394 U.S. 1012, 89 S.Ct. 1628, 23 L.Ed.2d 39 (1969); *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C.Cir. 1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).[1] Thus, unless the Board's order in this case comes within the narrow exception to this rule of non-reviewability, we may not examine the propriety of the Board's refusal to defer to the arbitrator's award.

The narrow exception to non-reviewability of representation decisions was created in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).[2] There, the Board had included nonprofessional employees in a professional employee bargaining unit without first obtaining the consent of a majority of the professional employees as specifically required by section 9(b)(1) of

---

1. The Board's ruling on a claim of unfair labor practice would be a reviewable final order that would give this court jurisdiction to examine the property of the Board's decision. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79, 84 S.Ct. 894, 896–897, 11 L.Ed.2d 849 (1964); *Hecla Mining Co. v. NLRB*, 564 F.2d 309, 313 (9th Cir. 1977). Where there is such a ruling, the court could consider whether the Board abused its discretion in refusing to defer to the arbitral award in the underlying representation proceedings. *Cf. Douglas Aircraft Co. v. NLRB*, 609 F.2d 352 (9th Cir. 1979) (where petition to set aside Board order, court reviewed Board's

refusal to defer). Here we have no reviewable final order of the Board; we have only an arbitrator's award.

2. Two rather obscure exceptions to the rule of nonreviewability do not apply in this case and have not been relied upon by the Teamsters. They involve questions of significant international importance, *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), and cases where the Board has clearly violated the constitutional rights of a complaining party, *Fay v. Douds*, 172 F.2d 720 (2d Cir. 1949).

the Act, 29 U.S.C. § 159(b)(1). The Supreme Court held that the professional employees could bring suit in federal court to "strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom v. Kyne, supra,* 358 U.S at 188, 79 S.Ct. at 184. The Court emphasized that " 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given professional employees, for there is no other means, within their control . . . to protect and enforce that right." *Id.* at 190, 79 S.Ct. at 185 (quoting *Switchmen's Union v. National Mediation Board,* 320 U.S. 297, 300, 64 S.Ct. 95, 96, 88 L.Ed. 61 (1943)).

The *Leedom* exception to non-reviewability of representation decisions has been construed narrowly. In *Boire v. Greyhound Corp., supra,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 the Supreme Court stated:

> The [*Leedom* ] exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in . . . the Act.

*Id.* at 481–82, 84 S.Ct. at 899. The Court in *Boire* then refused to set aside a Board unit determination which the district court had found to be inadequately supported by factual findings.[3] We have interpreted *Boire*

to preclude invocation of the *Leedom* exception where the Board has "violated neither statutes nor regulations," stating that "[t]he Supreme Court in *Boire* . . . limited *Leedom* to violations of statutory guidelines, and refused to extend it to possible abuses of discretion." *Local 1547, IBEW v. Local 959, Int'l Bhd. of Teamsters,* 507 F.2d 872, 875 (9th Cir. 1974).

█ Under the *Boire* and *Local 1547* interpretation of *Leedom,* we may not examine the propriety of the Board's refusal to defer to the arbitrator. Both the Teamsters and the Company agree that Board deferral to arbitration decisions involves discretion. See *Douglas Aircraft Co. v. NLRB,* 609 F.2d 352 (9th Cir. 1979); *Local 1327, IAMAW v. Fraser & Johnston Co.,* 454 F.2d 88, 91 (9th Cir. 1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 119 (1972). The Teamsters do not contend that nondeferral in this case violated any statute or any regulation of the Board; the Teamsters' sole contention is that the Board abused its discretion by not following its own precedents for exercise of that discretion. But we may not rely upon possible abuses of discretion as a basis for invoking the *Leedom* exception. *Cf. Local 1547, IBEW v. Local 959, Int'l Bhd. of Teamsters, supra,* 507 F.2d at 875 (alleged abuse of discretion by Regional Director does not excuse failure to exhaust administrative remedies with Board, so district court lacked jurisdiction to review representation decision in § 301 contract action). Thus, we will not examine the propriety of the Board's refusal to defer to the arbitrator's decision.[4]

---

3. The Court in *Boire* explained that the employer could obtain review only by refusing to bargain with the union elected to represent the allegedly improper unit, thereby causing the Board to rule that the employer had committed an unfair labor practice. Since the unfair labor practice ruling is a reviewable final order, the circuit court could examine the propriety of the Board's unit determination as part of its review of that order. *Boire v. Greyhound Corp., supra,* 376 U.S. at 476–79, 84 S.Ct. at 896–897; *see Hecla Mining Co. v. NLRB, supra,* 564 F.2d at 313.

4. Review of that refusal may be obtained by procedures similar to those set forth in *Boire v. Greyhound Corp., supra,* 376 U.S. at 476–79, 84 S.Ct. at 896–897, as explained in note 3, *supra.* Here, however, the Teamsters could not obtain review by simply refusing to bargain. The Board's conclusion that the Teamsters did not represent the new facility foreclosed that option. Rather, the Teamsters would be required to undertake other conduct amounting to an unfair labor practice such as picketing the new site in violation of section 8(b)(7) of the Act, 29 U.S.C. § 158(b)(7). The resulting unfair labor practice determination would then be reviewable by section 10(f), 29 U.S.C. § 160(f), and the

## III.

We are, therefore, faced with a direct conflict[5] between a Board decision and a previous arbitration decision. The Teamsters argue that the arbitrator's decision, having been rendered pursuant to Company-Teamsters stipulation, and being consistent with national labor policy, takes precedence. We disagree. Case law clearly establishes the preeminent position of the Board in conflicts with arbitrators.

The rule that Board decisions override arbitrator decisions, sometimes referred to as the supremacy doctrine, was first articulated by the Supreme Court:

> Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301. . . . The superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area.

*Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). *See also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 n.13, 94 S.Ct. 1011, 1021 n.13, 39 L.Ed.2d 147 (1974). Although dicta when rendered, this statement by the Court has spawned a line of cases establishing the preeminent position of the Board vis-a-vis arbitrators. *E. g., Boire v. Int'l Bhd. of Teamsters*, 479 F.2d 778, 801–02 (5th Cir. 1973); *Local 7–210, Oil Workers v. Union Tank Car Co.*, 475 F.2d 194, 197–99

(7th Cir.), *cert. denied*, 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 120 (1973); *Smith Steel Workers v. A. O. Smith Corp. supra*, 420 F.2d at 7; *Local 7–210, Oil Workers v. Union Tank Car Co.*, 337 F.Supp. 83, 87–88 (N.D.Ill.1971); *Dock Loaders Local 854 v. W. L. Richeson & Sons, Inc.*, 280 F.Supp. 402, 404–05 (E.D.La.1968). We agree with the Seventh Circuit's interpretation of these cases "that once the Board has acted, either before or after the arbitrator's award, the Board's order overrides the arbitrator's decision." *Local 7–210, Oil Workers v. Union Tank Car Co.*, *supra*, 475 F.2d at 199.

The Teamsters have cited no cases holding that an arbitrator's decision takes precedence over a Board decision. They simply argue that federal labor policy and the parties' stipulation require that the arbitrator's decision take precedence. We are convinced, however, that the policy behind the supremacy doctrine is sound; the Board's decision should take precedence.

The policy underlying the rule that a Board representation order overrides a conflicting arbitration is simply stated: the Board occupies a superior position for consideration of the laws involved and the individual interests that will be affected by a decision. This superior position results from the respective duties of the Board and arbitrators. The arbitrator's role is limited:

> "He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. He serves their pleasure

---

representation record would come before the reviewing court by section 9(d), 29 U.S.C. § 159(d).

**5.** The Teamsters contend that the arbitrator's decision does not directly conflict with the Board decision, and is therefore enforceable, because the arbitrator based his decision on two grounds: (1) that the collective bargaining agreement covered the new plant site, and (2) that the new site was an accretion to the existing bargaining unit. The Teamsters argue that the Board's determination was based only upon a finding of nonaccretion, and that the arbitra-

tor's finding that the collective bargaining agreement covered the new site is, therefore, not in conflict with the Board's decision. We reject this contention that the orders do not conflict. The Board had the arbitrator's opinion in the record before it, expressly acknowledged its existence when rendering the decision, and yet refused to follow it. We conclude, therefore, that the Board rejected both of the arbitrator's grounds for ordering the Company to recognize the Teamsters as the representative of the new facility's employees.

only to administer the rule of law established by their collective agreement."

.    .    .    .    .

His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the "industrial common law of the shop" and the various needs and desires of the parties. The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties[.]

*Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 52 n.16, 53, 94 S.Ct. at 1022 n.16, (quoting Shulman, *Reason, Contract, and Law in Labor Relations,* 68 Harv.L.Rev. 999, 1016 (1955)). The Board, on the other hand, has a broader view. It may consider not only the union and employer before it, but all other individuals who may be affected by, and all provisions of the Act that may be relevant to, a representation decision. That arbitrators are more limited in their focus is clear:

The National Labor Relations Act guarantees certain rights to employees, employers, bargaining representatives, and the public, and the Board is charged with protecting these interests. An arbitrator is not. His function is to discern the intention of the parties to a contract, who have hired him to resolve their differences. The interests of third parties, such as an individual employee, a group of employees or the public, are not his primary concern.

*NLRB v. Horn & Hardart Co.,* 439 F.2d 674, 678 (2d Cir. 1971).

The importance of the Board's broader responsibility to further the purposes of the Act in regard to all parties involved in a dispute is amply illustrated by the facts of this case. Section 7 of the Act, 29 U.S.C. § 157, grants to employees the primal right to select a collective bargaining representative of their own choosing or, as occurred here, to elect not to be represented by a

union. *See Sheraton-Kauai Corp. v. NLRB,* 429 F.2d 1352, 1354–55 (9th Cir. 1970). The Board could appropriately consider the implications of its decision for these section 7 rights while seeking to resolve the dispute between the parties; the arbitrator, on the other hand, was limited to consideration of the Company-Teamsters dispute.[6]

It is unfortunate that conflicts such as this occur. However, given our dual system for dealing with labor disputes it seems inevitable that some conflicts will arise. We hold that valid Board representation decisions take precedence over conflicting arbitration decisions. Accordingly, the district court's dismissal of the Teamsters' suit to affirm the arbitration award was proper.

AFFIRMED.

CHOY, Circuit Judge, concurring:

I agree with the majority's conclusion that a valid Board order takes precedence over an arbitrator's award. I believe that it should be emphasized, however, that neither we nor the district court concluded that the Board order in question was in fact valid. We merely assumed for the purpose of this case that the Board order was valid, because, as discussed in Part II of the majority opinion, we do not have jurisdiction to consider whether the Board should have deferred to the arbitrator.

Should a future Board order properly raise the issue whether the Board abused its discretion in refusing to defer to the arbitrator (e. g., if the Board were to find that the Teamsters committed an unfair labor practice where that finding was based upon the underlying representation decision) the issue will be reviewable uninfluenced by anything in our opinion today. *See generally Douglas Aircraft Co. v. NLRB,* 609 F.2d 352 (9th Cir. 1979) (Board abused its discretion by failing to defer to arbitrator where arbitrator's decision might have rested on ground that was not clearly repugnant to the Act).

---

6. For the reasons set forth in *Sheraton-Kauai Corp. v. NLRB,* 429 F.2d 1352, 1356 n.5 (9th Cir. 1970), we reject the suggestion made at oral argument that we enforce the arbitration order with the thought that the employees may simply decertify the Teamsters should they not wish to be represented by them.