52 L.Ed.2d 396 (1977); *Bell v. Bolger,* 708 F.2d 1312, 1321 (8th Cir.1983).

It is true that subjective criteria and professional judgment may serve as tools for discrimination, *Bell,* 708 F.2d at 1319–20, but the need for discretion is paramount in the field of higher education. The criteria utilized by defendants' evaluation system are sufficiently defined. *See Findings of Fact No. 16.* That these criteria have not been used as tools for discrimination is established by defendants' statistical evidence. *See Findings of Fact Nos. 30 through 35.*

 A great deal of evidence was presented in this case concerning various "incidents" involving plaintiff and her superiors. After listening to many days of testimony concerning these "incidents", this Court is left with the firm conviction that both plaintiff and her superiors, especially Ms. McPherron, have had strong personality conflicts. Personality conflicts and dissatisfaction with the decisions of one's superiors, however, do not rise to the level of a federal cause of action. In the case at bar, this Court is of the opinion that the decisions of plaintiff's superiors were disassociated from race.

### ORDER AND JUDGMENT

Pursuant to the Memorandum filed herein this day,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment be and is entered in favor of defendants on plaintiff's complaint and that plaintiff's complaint be and is dismissed.

**PACIFIC ELECTRICAL CONTRACTORS ASSOCIATION, Plaintiff,**

v.

**A.A. ELECTRIC, et al., Defendants.**

**PACIFIC ELECTRICAL CONTRACTORS ASSOCIATION, Plaintiff,**

v.

**AKIMOTO ELECTRICAL SERVICE, et al., Defendants.**

Civ. Nos. 81–0314, 82–0394.

United States District Court, D. Hawaii.

March 30, 1984.

Cedric Choi, Honolulu, Hawaii, for defendant Naka's Elec. Service.

Roy M. Kodani, Honolulu, Hawaii, for defendants Herb's Elec. and Island Wiring Service, Inc.

Stephen M. Okano, David H. White, Okano, Wong & White, Honolulu, Hawaii, for defendants Grant's Elec., Inc.; Kelii Elec., Inc.; Mac's Elec. Service; and Maunaloa Elec., Inc.

## ORDER GRANTING MOTION TO VACATE ARBITRATOR'S DECISION AND FOR PARTIAL SUMMARY JUDGMENT

PENCE, District Judge.

Plaintiff in this action is the Pacific Electrical Contractors' Association (PECA), an · organization of electrical contractors. Defendants are some of PECA's former members. This action arises out of a dispute between PECA and the International Brotherhood of Electrical Workers. PECA and Local 1186 of the IBEW have been parties to a series of collective bargaining agreements covering employment in the electrical industry.

In November of 1980, Local 1186 unilaterally rescinded the collective bargaining agreements. The union then formed a competing electrical contractors' association and encouraged PECA members to leave PECA and join the new association. PECA filed several suits in federal district court. It sued the union for breach of the collective bargaining agreement, and it filed these two actions against its former members. PECA also filed an unfair labor practices action with the National Labor Relations Board.

On June 21–25, 1981, an NLRB Administrative Law Judge conducted hearings on PECA's charges that the union had committed unfair labor practices by rescinding the collective bargaining agreement and attempting to lure PECA members to join the new electrical contractors' association. The judge issued his decision and order on April 6, 1982. He found that the union had in fact been guilty of unfair labor practices by prematurely rescinding the collective bargaining agreements.

On September 30, 1982, the NLRB affirmed the Administrative Law Judge's decision that the union had violated the terms of the collective bargaining agreement and engaged in unfair labor practices. The Ninth Circuit Court of Appeals affirmed the NLRB decision on July 13, 1983.

On January 4, 1982, *after* the hearings were held by the Administrative Law Judge, but *before* he issued his decision and order, PECA and the union agreed to a Stipulation and Order providing for arbitration of the legality of the union's unilateral rescission of the collective bargaining agreements. This agreement to arbitrate was entered into in the context of the federal district court action.

The arbitrator reached his decision on March 15, 1983, after the Administrative Law Judge and the NLRB had made their decisions, but before the Ninth Circuit affirmed them. The arbitrator found that the union was entitled to rescind its agreement with PECA. The arbitrator's decision was therefore in conflict with the subsequent NLRB determination.

Plaintiff PECA has now moved this court to vacate the arbitrator's decision and to grant it partial summary judgment on the issue of the union's liability. PECA's case against the union has been settled, so the motion remains pending only against PECA's former members, the defendants in these cases. This motion thus presents two questions: first, whether this court should vacate the arbitrator's decision, and second, whether plaintiff is entitled to summary judgment on the question of liability.

## I. VACATING THE ARBITRATOR'S DECISION

The gist of plaintiff's motion is that the NLRB decision must take precedence over the conflicting determination reached by the arbitrator, and therefore the arbitration award must be vacated. Plaintiff cites the well-established principle that decisions of the NLRB take precedence over conflicting decisions of arbitrators. *Carey v. Westinghouse Electric*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); *Cannery Warehousemen v. Haig Berberian, Inc.*, 623 F.2d 77, 81 (9th Cir.1980). Plaintiff argues that in this case the NLRB and the arbitrator are in direct conflict, and that the arbitrator's decision must therefore be stricken.

Defendants make three arguments opposing any action vacating the award. First, they argue that, regardless of the merits, plaintiff is not entitled to the remedy it seeks. Defendants contend that an arbitration award cannot simply be vacated; enforcement, or denial of it, must await a request by the party who prevailed in the arbitration to enforce the award. Defendants cite no authority for this point; rather, they point out that plaintiff has not cited any case in which such a motion to vacate was granted.

■ Defendants' argument does not state the rule in this circuit. In fact, the Ninth Circuit has held that, ordinarily, a party opposing an arbitration award must move to vacate the award or be barred from further legal action. *Sheet Metal Workers, Local 252 v. Standard Sheet Metal*, 699 F.2d 481, 482 (9th Cir.1983). *Sheet Metal Workers* did not involve an arbitration award that conflicted with an NLRB decision. This court, however, finds the distinction immaterial. The central point in both cases is the same: may a party move to vacate an arbitration award? This court finds *Sheet Metal Workers* to be good precedent, and holds that the remedy of vacating an arbitrator's decision is appropriate when cogent reasons for it are advanced.

■ Moreover, the arbitrator's decision in this case is not one that requires enforcement. The arbitrator decided that the union had been entitled to rescind the contract with PECA; his decision merely approved an action that had already been completed. Therefore, there was nothing in the decision that the union would have come before this court to enforce. It follows that to deny plaintiff's motion to vacate the arbitrator's decision on the ground that plaintiff must wait until enforcement proceedings would be to forever foreclose plaintiff from presenting its arguments. This court finds that it may consider the legal status of the arbitrator's award in the context of the plaintiff's motion to vacate.

Second, defendants argue that the arbitrator's decision should be deemed the final determination in this case, without regard to the NLRB decision. Defendants' reasoning is that plaintiff brought this case in federal district court under § 301 of the National Labor Relations Act, which provides for actions for breach of collective bargaining agreements. The proceedings before the NLRB, on the other hand, were based on an unfair labor practices complaint that alleged various violations of oth-

er sections of the NLRA. Because the proceedings in this court and those before the NLRB were rooted in different statutory soil, defendants claim, there is in fact no conflict between the arbitrator's decision and the NLRB determination; the two cases are different, and neither can control the other.

Defendants' argument is specious. The key question is whether there is in fact a conflict between the arbitrator's decision and the determination of the NLRB. The fact that the proceedings in this court and those before the NLRB are brought according to different sections of the NLRA does not foreclose the possibility that the NLRB and the arbitrator might both consider the same issue. A practical look at the realities of this litigation shows that while different tribunals and different sections of the NLRA may be involved, the central issue of whether the union acted properly remains constant.

Finally, defendants assert that the well-established doctrine that NLRB decisions must take precedence over conflicting arbitrators' determinations should not apply in this case because the plaintiff agreed to submit to arbitration and to be bound by the arbitrator's decision. Defendants' argument that plaintiff should be "judicially estopped" to challenge the arbitration is a variation on the same theme; the two arguments will be dealt with together.

The essence of defendants' claim is that because plaintiff agreed to be bound by the results of the arbitration, it now must not be heard to complain that the arbitrator's decision was not favorable to it and that it should be vacated. Neither party has been able to cite to this court a case in which the facts are in all respects identical to the facts here. Plaintiff, however, has referred to the Ninth Circuit decision in *Cannery Warehousemen, etc., v. Haig Berberian, Inc.*, 623 F.2d 77 (9th Cir.1980). This court finds that the precedent of *Cannery Warehousemen* should be followed in this case.

The *Cannery Warehousemen* litigation involved an action in federal district court seeking arbitration as to the terms of a collective bargaining agreement and a simultaneous representation proceeding before the National Labor Relations Board. The parties stipulated to an order issued by the district court that the dispute before it should be submitted to arbitration. The decision reached by the arbitrator conflicted with the NLRB determination. The Ninth Circuit held that the NLRB determination took precedence over the arbitrator's decision, even though the parties had agreed to submit to the arbitration. The Ninth Circuit considered and rejected arguments identical to those made here that the parties' stipulation must take precedence over the NLRB decision.

Defendants appear to feel that the *Cannery Warehousemen* case does not apply here because the NLRB decision in question in that case was a representation decision. Defendants imply that a representation decision is so unlike the unfair labor practices decision involved here that the principle of *Cannery Warehousemen* is not useful. This court disagrees, and finds that *Cannery Warehousemen* provides the rule for this case. The Ninth Circuit made no indication that in the situation where the NLRB and an arbitrator disagree, an NLRB representation decision is any different from other NLRB decisions, nor did the court hint that only representation decisions should override conflicting arbitration decisions. Rather, the court stated its conclusion broadly: "[c]ase law clearly establishes the preeminent position of the Board in conflicts with arbitrators." 623 F.2d at 81. Indeed, the Ninth Circuit found support for its position in cases from other circuits in which NLRB unfair labor practices decisions were held to supersede arbitrators' conclusions. *See Boire v. Int'l Bhd. of Teamsters*, 479 F.2d 778, 801–02 (5th Cir.1973). This court finds that any implication that the *Cannery Warehousemen* holding should not apply here, because a different type of NLRB decision was involved, is meritless.

In this case, as in *Cannery Warehousemen*, the parties agreed to a stipulation

and order of the court that the dispute be arbitrated. This court agrees with the *Cannery Warehousemen* panel that the agreement of the parties cannot alter the balance of power between the NLRB and the arbitrator. As the Ninth Circuit put it, "the Board [NLRB] occupies a superior position ... The arbitrator's role is limited." 623 F.2d at 81. A party agreement, even one embodied in a court order, does not operate to subtract anything from the NLRB's authority over conflicting arbitral awards. As the Ninth Circuit recognized, conflicts such as the one in this case are unfortunate, but they will sometimes arise in a dual system for dealing with disputes. *See* 623 F.2d at 83. When such conflicts occur, the NLRB determination takes precedence.

■ This court concludes that it is proper at this time to vacate Arbitrator Kagel's decision. Even though the arbitration was entered into by agreement of the parties, the conflicting NLRB decision must take precedence over it.

## II. GRANTING PLAINTIFF PARTIAL SUMMARY JUDGMENT

The second question presented to this court by plaintiff's motion is whether plaintiff should be granted partial summary judgment on the issue of liability. The plaintiff's theory is that the determination of the NLRB should be given collateral estoppel effect against defendants on the question of whether the union was entitled unilaterally to rescind its agreement with PECA. If the NLRB's findings are so used, plaintiff reasons, there will be no issue of material fact remaining and plaintiff will be entitled to summary judgment as a matter of law.

Defendants interpose two objections to the grant of summary judgment. First, they argue that the plaintiff has no standing to ask for summary judgment based on the NLRB decision. Defendants' reasoning is that by winning summary judgment by means of collateral estoppel, the plaintiff would actually be "enforcing" the NLRB's order. Plaintiff, defendants assert, has no standing to enforce an order of the NLRB; only the NLRB, through the

circuit court of appeals, may enforce its orders.

■ This court again finds defendants' argument meritless. The Ninth Circuit has already enforced the NLRB order. And, more to the point, plaintiff is not trying to "enforce" the order of the NLRB at all. It is, rather, trying to use it in a closely related action to prevent relitigation of an already-resolved issue. This court rejects defendants' "standing" argument.

Defendants' second objection is that collateral estoppel cannot be invoked against them because the material issue in the district court case is not one that was considered by the NLRB in the unfair labor practices proceeding. Dealing with this objection requires a look into the requirements for collateral estoppel and into the facts of this case.

It is clear to this court that if it finds application of collateral estoppel warranted, it has statutory authority to use the NLRB determination to foreclose relitigation of any issue. The Ninth Circuit made this clear in *NLRB v. Heyman*, 541 F.2d 796 (9th Cir.1976). In that case, as here, there was an action for breach of a collective bargaining agreement in district court, and there was also an unfair labor practices action before the NLRB. The Ninth Circuit held that "the jurisdictional grant within § 301 carries with it both the powers necessary to enforce judgments and to give judgments effect in such quasi-judicial forums as the NLRB, through the application of such doctrines as res judicata or collateral estoppel ...." 541 F.2d at 799. The *Heyman* case demonstrates that even though one proceeding may be based upon § 301 for breach of contract and another upon various other sections of the LMRA for unfair labor practices, collateral estoppel may be applied to similar issues in the cases.

The Ninth Circuit has also elucidated the standard to be applied in deciding whether collateral estoppel should be used to grant summary judgment in a district court action when the NLRB has already made a determination in an unfair labor practices proceeding. In *Paramount Transport*

*Systems v. Chauffeurs, Teamsters, etc.,* 436 F.2d 1064 (9th Cir.1971), the Ninth Circuit affirmed the district court's granting of summary judgment where the judgment was based on the prior litigation of liability before the NLRB. The court stated the standard thus:

> "[C]ollateral estoppel effect should be given only to those administrative determinations that have been made in a proceeding fully complying with the standards of procedural and substantive due process that attend a valid judgment by a court and further, that such effect should be accorded only to those findings upon material issues that are supported by substantial evidence on the administrative record as a whole."

436 F.2d at 1066.

This court finds that the standard as laid out by the Ninth Circuit has been satisfied here. First, the proceedings before the Administrative Law Judge and the NLRB complied with judicial standards of substantive and procedural due process. The Administrative Law Judge held three days of hearings. The defendants were allowed to examine and cross-examine witnesses and to create a record. The union also filed post-hearing briefs, exceptions, and petitions for review with the NLRB and the Ninth Circuit. Sufficient due process was afforded the defendants.

Second, one of the issues in this proceeding was also a material issue before the NLRB. This action, like the NLRB unfair labor practices proceedings, was begun when the union unilaterally rescinded its agreements with PECA. At least one of the issues in both this action and the unfair labor practices proceeding, then, is whether the union was entitled unilaterally to rescind the contract. The Ninth Circuit, affirming and enforcing the NLRB order, noted that the NLRB had found "that Local 1186 had no lawful right prematurely to terminate its collective bargaining agreement with PECA," and had thereby arrived at the conclusion that Local 1186 had engaged in unfair labor practices. The identical question of the legality of the rescission is posed in this case, and for the answer this court looks to the determinations of the Ninth Circuit and the NLRB. Only the legal effect of the answer is different: in this action, a finding that the union was not entitled to rescind the contract leads to the conclusion that it violated § 301 of the NLRA. Because the issue of the legality of the rescission was as material in the NLRB proceeding as it is here, this court finds that collateral estoppel effect may be given to the NLRB determination.

Finally, the NLRB's decision, and the Ninth Circuit's affirmance of it, were supported by substantial evidence on the administrative record as a whole. The administrative record in this case is complete, and it contains ample evidence to support a finding that Local 1186 had no right to unilaterally rescind its contract with PECA.

Because the *Paramount Transport* test is satisfied here, this court finds that the NLRB determination should be given collateral estoppel effect. Partial summary judgment for plaintiff is therefore proper. The arbitrator's decision is vacated, and summary judgment, on the question of liability, is granted to plaintiff.

IT IS SO ORDERED.