**Ernest E. SARGENT, et al., Plaintiffs,**

v.

**PAINE WEBBER, JACKSON & CURTIS, INC. et al., Defendants.**

Civ. A. No. 84–2911.

United States District Court, District of Columbia.

Dec. 8, 1987.

gents $46,000, representing less than 20 percent of the approximately $260,000 that plaintiffs had lost during the period the defendants managed their account.

Plaintiffs then moved this Court to vacate the arbitral award; Paine Webber filed a cross motion seeking confirmation of the award.

For the reasons set forth herein, the Court grants plaintiffs' motion to vacate the arbitration award and denies defendants' cross-motion. The matter is remanded to the NYSE Arbitration Panel for clarification.

Ernest E. Sargent, pro se.

Michael I. Smith, Freedman, Levy, Kroll & Simonds, Washington, D.C., for defendant.

## MEMORANDUM ORDER

(Vacating Arbitration Award
and Remand)

BARRINGTON D. PARKER, District Judge.

Plaintiffs, Ernest and Cynthia Sargent, filed this action against the brokerage house, Paine Webber, Jackson & Curtis, Inc. ("Paine Webber"), and several of its agents alleging negligent management of plaintiffs' investment accounts. On October 31, 1984, an Order was entered dismissing without prejudice, allowing plaintiffs the right to seek appropriate judicial relief, following the completion of arbitration proceedings as provided under earlier agreements between the parties. Plaintiffs' submission to an arbitration board was required by the "Client Option Agreements," and was mandated by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14.[1]

Arbitration took place in July 1986, before a panel of three arbitrators selected in accordance with New York Stock Exchange ("NYSE") Rules. On August 19, 1986, in a 2–1 decision, the panel awarded the Sar-

## BACKGROUND

In July 1983, plaintiffs retained Paine Webber to manage their stock portfolio, consisting primarily of shares of stock and put and call options in Coleco Industries. Sometime after their initial purchases of Coleco, the share price of that stock declined. To minimize or eliminate losses, plaintiff Ernest Sargent devised a "cost averaging plan," whereby he would purchase additional shares of Coleco at the reduced market price and hold them until the price began to rise. Under this plan, plaintiffs could recover losses at a per-share price lower than that at which they made their initial purchases. This plan required that defendants be attentive to the daily fluctuations in the value of Coleco stock and to respond accordingly without delay.

Throughout the fall of 1983 and into 1984, plaintiffs' investment managers allegedly ignored crucial changes in the price of Coleco and failed to respond according to instructions. As a result, plaintiffs lost money which they estimated at some $256,000. In an attempt to regain their losses, plaintiffs instituted suit in this Court.

As permitted by the NYSE rules, the arbitration panel kept no record and entered no findings of fact or conclusions of

1. The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as

law.[2] Marc White, then serving as plaintiffs' attorney in the arbitration proceedings, apparently felt the award was so grossly deficient as to "constitute[ ] error that must be remedied."[3] Even so, Mr. White evidently did not agree with plaintiffs on the proper basis for further action and consequently ceased representing their interests. Subsequent to the arbitration award the plaintiffs have not been represented by counsel and their motion to vacate the arbitration award was filed *pro se*.[4]

## DISCUSSION

■ A district court has the prerogative to exercise independent review of an arbitration award under the Federal Arbitration Act. 9 U.S.C. §§ 9–10 (1987). Section 10 of the Act specifically gives United States district courts the power to vacate arbitration awards. *Id.* § 10. Even so, courts must bear in mind that judicial review of arbitrators' decisions is very narrowly limited.

■ It is well settled, however, that a court should not attempt to enforce an award that is ambiguous, indefinite or irrational. Although a court is precluded from overturning errors in factual determinations, "nevertheless, if an examination of the record before the arbitrator reveals *no support whatever* for his determinations, his award must be vacated." *NF & M Corp. v. United Steelworkers of America,* 524 F.2d 756, 760 (3d Cir.1975) (emphasis added).

Since the record before the arbitrators has not been presented and the decision by the panel is very brief and unaccompanied by any explanation of the damage calculation,[5] this Court cannot determine whether the award is supported by the record. It is also impossible to discern what calculation led to a final award which was only one-fifth of the amount claimed by the plaintiffs. In light of these deficiencies, effective judicial review of the arbitration award is extremely difficult.

■ For judicial review to be meaningful, an arbitrator's award cannot be absolutely immune from scrutiny. *Siegel v. Titan Industrial Corporation,* 779 F.2d 891, 894 (2d Cir.1985). Several courts have remanded awards to arbitrators to clarify their meaning or effect. *See Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42, 45–46 (2d Cir.1985) (award was ambiguous and "warrant[ed] a remand to the arbitrators to enable them to state what their true intention was ..."); *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1980) ("an ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce."); *Cleveland Paper Handlers & Sheet Straightners Union, No. 11 v. E.W. Scripps Co.,* 681 F.2d 457, 460 (6th Cir.1982) (per curiam) ("an ambiguous award may not be

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1987).

2. Rule 624 of the New York Stock Exchange Rules states: "Unless requested by the arbitrators or a party or parties to a dispute, no record of an arbitration shall be kept." NYSE, Arbitration Rules, Article XI, Rule 624 (1983).

3. Exhibit D to plaintiffs' Motion to Vacate (letter from Marc A. White to Robert S. Clemente, Esq., Director of Arbitration, NYSE, dated September 4, 1986).

4. Plaintiffs also allege that the dissenting arbitrator, Mr. William Jones, was biased. According to the plaintiff, Mr. Jones was party to *Nunes v. Legg, Mason, Wood & Walker, Inc.,* C.A. No. 81–0119, a securities fraud action in which Paine Webber's employees allegedly appeared as witnesses. Mr. Jones, however, was not a party to the suit, he was merely an officer of the corporate defendant. Paine Webber's involvement in the case was even more tenuous—the record reveals that Paine Webber's deposition was noticed, not that it was actually taken. *Nunes* was dismissed shortly thereafter.

5. The August 19, 1986, Arbitration Decision was a standardized form with the following customized phrase:

[I]n full and final settlement of the above-referenced matter, respondent Painewebber [sic] shall pay to the claimants the sum of $43,-000.00 and respondent Kevin Greenan shall pay to the claimants the sum of $3,000.00, and further upon claimants [sic] request and with the consent of respondents the claims of the claimants against respondents Bruce Edginton, C. Jordan Ball and Joan Doyle are in all respects dismissed.

enforced but should be remanded to the arbitrator."): *Oil Chemical & Atomic Workers International Union v. Rohn & Haas Texas, Inc.,* 677 F.2d 492, 495 (5th Cir.1982) (per curiam) ("remand to the arbitrator is the appropriate disposition of an enforcement action when an award is patently ambiguous ..."); *Shearson Loeb Rhoades Inc. v. Much,* C.A. No. 81–4225 at 8–9 (N.D.Ill., Jan. 3, 1983) ("the court concludes that the award is without support in the record.... the court therefore, in the exercise of its discretion, directs a rehearing by the Arbitrator of the damage calculations.").

When reviewing arbitration awards, it is often necessary for a court to understand the calculation methods utilized by the arbitrators. In *Siegel,* the Second Circuit held:

Where ... an arbitrator's award appears to have been reached on the basis of a precise mathematical calculation, it is desirable, and in some cases may be necessary, to know the basis for the calculations underlying the award. A remand for clarification in such circumstances would not improperly require arbitrators to reveal their reasons, but would instead simply require them to fulfill their obligation to *explain the award sufficiently to permit effective judicial review.* 779 F.2d at 894 (emphasis added).

[5] If considerable doubt surrounds an award, a court is justified in remanding it back to the arbitrators. In *Shearson Loeb,* the district court held that the basis for an arbitration award favoring the brokerage house's customer was not clear and remanded for a recalculation of the damages. Working with more evidence and a more detailed record than is now before this Court, the *Shearson Loeb* court determined that the damage portion of the award was based on "sheer speculation." Noting that newly discovered evidence is not a proper basis for remanding an arbitration award, the court stated that it "expects the parties to present new and hopefully more precise methods for determining the extent of Mr. Much's [the customer's] damages from the primary facts already of record." C.A. No. 81–4225 at 3 (N.D.Ill., Oct. 20, 1983).

When Shearson Loeb appealed the district court's vacation and remand of the award, the Seventh Circuit sent the case back to the arbitrator. Shortly thereafter, the arbitrator held a damages hearing and the final arbitration award, confirmed by the district court, was much different than the original award.

■ It is entirely appropriate for a district court to direct arbitrators to explain their awards. *Galt v. Libbey–Owens–Ford Glass Co.,* 397 F.2d 439, 442 (7th Cir.1968). This method avoids any judicial guessing as to the rationale behind the award. Remands do not constitute judicial invasions of the arbitrators' province but rather serve to give the parties what they bargained for—a clear decision from the arbitrators.

■ This Court cannot clearly ascertain the basis for the plaintiffs' award, nor can it be certain whether the arbitration panel considered all the relevant information. Given the ambiguity surrounding the Sargents' $46,000 award, a remand to the arbitrators appears to be appropriate. While arbitration awards generally receive deferential review by the courts, deference is not abdication. For this Court to engage in meaningful judicial review of plaintiff's award, the basis for the calculations underlying the award must be made known.

For the reasons set forth above, it is this 8th day of December, 1987,

## ORDERED

Plaintiffs' motion to vacate the arbitral award of August 19, 1986, is granted, and the award, be and it is vacated. This matter is remanded to the NYSE Arbitration Panel for a full explanation of the manner in which damages were computed so as to permit effective judicial review. Defendant's cross motion to confirm is denied. The Panel shall act expeditiously on the matter and file its final decision with this Court 45 days from the date of this Order.