Ernest E. SARGENT, et al., Plaintiffs,

v.

PAINE WEBBER, JACKSON & CURTIS, INC., et al., Defendants.

Civ. A. No. 84–2911.

United States District Court, District of Columbia.

May 10, 1988.

Ernest E. Sargent, Washington, D.C., pro se.

Michael I. Smith, Freedman, Levy, Kroll & Simonds, Washington, D.C., for defendants.

### MEMORANDUM ORDER

(Denying Defendants' Motion for Reconsideration)

BARRINGTON D. PARKER, District Judge.

Defendants Paine Webber, Jackson and Curtis, Inc. have moved for reconsideration of this Court's Memorandum Order of December 8, 1987, 674 F.Supp. 920 (D.C.Cir. 1987), which vacated the arbitral award of August 19, 1986, and remanded the matter to the New York Stock Exchange ("NYSE") Arbitration Panel. The Court's Memorandum Order directed that the arbitration panel provide a full explanation of the manner in which $46,000 damages awarded to plaintiffs were computed so as to permit effective judicial review. Defendants argue that the plaintiffs' motion to vacate the August 19th award was untimely and barred by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1–14. They also contend that this Court exceeded its authority in vacating and remanding the award.

After a review of the legal memoranda submitted by the parties, as well as the applicable law, this Court finds no new evidence, argument, or law that would justify reconsideration of the Court's December 8, 1987 Memorandum Order. For the reasons set forth below, the Court denies the defendants' motion for reconsideration.

## FACTUAL BACKGROUND

The award in question here was rendered on August 19, 1986, but was not filed in the formal sense. Rather, it was sent by letter dated August 21, to plaintiffs' attorney, Marc White. It is not clear when Mr. White received the letter. Plaintiffs state however, and it is not disputed, that they did not receive a copy of the arbitral decision until August 27, 1986. On September 4, 1986, plaintiff Earnest Sargent and his attorney both wrote to the Director of Arbitration at the NYSE and requested a hearing *de novo*. The Director denied their requests in a letter dated September 23, 1986. Prior to receiving the Director's letter, on September 25, 1987, attorney White wrote to Mr. Sargent, informing him that he was "willing to go through another hearing at the [arbitration panel] if they grant our request." In the event that the request was denied, Mr. White indicated that he would possibly be "willing to file a motion to vacate" the $46,000 award for the plaintiffs. For reasons not reflected in the record and at a date uncertain, Mr. White later chose not to represent the plaintiff.

As a result of attorney White's latent unwillingness to file an action to vacate the arbitration award, plaintiffs had less than two months to file such an action. On November 26, 1986, more than three months from the date of the award, but less than three months from plaintiffs' August 27, 1986 receipt of the decision, plaintiffs filed a *pro se* motion to vacate the arbitration panel's award.

On December 8, 1987, this Court granted plaintiffs' motion and vacated the arbitral award of August 19, 1986. Because the award to plaintiffs represented less than 20 percent of the approximately $256,000

which they had lost during the period the defendants managed their investment accounts, the Court held that it could not clearly ascertain the basis for the award, nor could it be certain whether the arbitration panel considered all the relevant information. Given the uncertainty and ambiguity surrounding the award, the Court ordered that the matter be remanded to the arbitration panel for a full explanation of the manner in which damages were computed so as to permit effective judicial review. Defendants' cross-motion to confirm the award was denied.

On December 17, 1987, defendants filed the present motion for reconsideration of the Court's Memorandum Order. The Sargents, now represented by counsel, opposed the defendants' motion.

## LEGAL ANALYSIS

### A.

The Court will first address the defendants' challenge that the plaintiff's motion to vacate was time-barred by a three-month statute of limitation. Section 12 of the FAA provides in part:

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is *filed or delivered.*

9 U.S.C. § 12 (emphasis added).

The very language of 9 U.S.C. § 12 is ambiguous—the date that the award is "filed or delivered" can lead to different results as is evident from the case law. Some courts have interpreted the phrase to mean the *date* designated on the face of the award. (*Witt v. Reinholdt & Gardner*, 587 F.2d 383, 384 (8th Cir.1978); *Colavito v. Hockmeyer Equipment Corp.*, 605 F.Supp. 1482, 1487 (S.D.N.Y.1985)). Other courts look to the date the award was *filed* or *entered*, referring to the date the award was *actually docketed* as contrasted to the date on the face of the award. (*Foster v. Turley*, 808 F.2d 38, 41 (10th Cir.1986); (*Tokura Construction Co., Ltd. v. Corporacion Raymond, S.A.*, 533 F.Supp. 1274 (S.D.Tex.1982). However, several courts

have held that an application to vacate must be made within three months of *receipt* of the decision. (*Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64 (S.D.N. Y.1980) ("An application to vacate or modify an arbitral award must be made *within three months of receipt of the decision under federal law." Id.* at 68 (citing 9 U.S.C. § 12) (emphasis added). Because the plaintiff challenged the arbitrator's award more than eleven months after receiving the decision, the court held that his claim was time-barred.) If "delivery" of the award is deemed to be receipt of the award, as declared in *Dinger,* the motion to vacate was timely filed by the Sargents.

### 1.

■ But even if the "delivery" of the award is determined to be the day it was mailed, plaintiffs' right to judicial review of the award is not forfeited because the doctrine of equitable tolling should be applied in this case.

The equitable tolling doctrine is "read into every federal statute of limitation." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Numerous courts have held that the equitable tolling doctrine is "plainly available to federal securities law plaintiffs." *Osterneck v. E.T. Barwick Industries, Inc.,* 825 F.2d 1521 (11th Cir.1987) (citing *Schaefer v. First National Bank,* 509 F.2d 1287, 1295–96 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). While this proceeding is not a federal securities law case, the activities involved were of a commercial nature. In tolling the statute of limitations in the commercial context, courts look for fraud on the part of the defendants and diligence on the part of the plaintiffs. *Osterneck, supra,* at 1535; *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1004 (7th Cir.1984).

Time limits for filing actions under Title VII are subject to equitable tolling, as well. In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that a time limit for filing a discrimination claim was "like a statute of limitations, . . . subject to waiver, estoppel, and equitable tolling." A court's equitable power to toll a statute of limitations may be exercised in carefully circumscribed instances. The Supreme Court has laid out examples of when a court may properly allow tolling:

> [Where] a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

*Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984) (per curiam) (citations omitted).

The facts in this case fall within the circumscribed instances as defined by the Supreme Court. Plaintiffs believed that the NYSE may hold a new hearing in their case; they also thought their attorney may pursue a possible motion to vacate the arbitrators' award; plaintiff Earnest Sargent explored several avenues of additional relief; in the end, he filed a motion to vacate the award himself.

The fact that plaintiff Sargent filed his motion *pro se* lends further support to the application of the doctrine of equitable tolling. This Circuit has recently held that an appellant who brought a suit *in forma pauperis* should not have his case dismissed for failure to comply with the 30–day time limit to serve his complaint.[1] *Mondy v. Secretary of the Army,* 845 F.2d 1051 (D.C.Cir.1988). In *Mondy,* the plaintiff's complaint was served upon the defendant four months after he received notice regarding the final agency action on his employment discrimination claim. Under the relevant statute, the time for the plaintiff to bring suit began running from the date of his *receipt* of notice of final action on his claim. Because the plaintiff

---

1. While the case before this Court was brought *pro se,* there is no reason to believe that an *in*
*forma pauperis* case would be given greater indulgence than a *pro se* case.

was filing *in forma pauperis* and diligently pursued his complaint, the court of appeals applied the doctrine of equitable tolling. *Id.* at 1054–1057.

The *Mondy* court referred to two circuit cases involving an *in forma pauperis* party for further support. In *Paulk v. United States,* 830 F.2d 79, 83 (7th Cir.1987), the Seventh Circuit held that a 30–day time limit was tolled during the pendency of a petition to proceed *in forma pauperis.* In *Cooper v. Bell,* 628 F.2d 1208 (9th Cir. 1980), the Ninth Circuit found that the need for equitable tolling is strongest when a claimant is filing an action for himself at the outset, because he will be "unschooled in the filing procedure" and less articulate about his claim. *Id.* at 1213 & n. 10.

Plaintiff Sargent acted diligently and therefore, the Court may properly invoke equitable principles to excuse his slight delay. *See Baldwin County Welcome Center, supra,* at 151, 104 S.Ct. at 1725. *See also, Mondy, supra,* at 1053, 1057. The due diligence exception to 9 U.S.C. § 12 was recognized in *Holodnak v. Avco Corp.,* 381 F.Supp. 191 (D.Conn.1974), *rev'd in part on other grounds,* 514 F.2d 285 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975). In *Holodnak,* the plaintiff's motion to vacate an arbitrator's award was served three months and one day after the filing of the arbitration award. The district court judge and the magistrate who heard pre-trial motions both denied the defendant's argument that the plaintiff's motion to vacate was time-barred. They emphasized the due diligence of the plaintiff in attempting to perfect service within the time limit and the absence of any prejudice suffered by the defendants as a result of the one-day delay. 381 F.Supp. at 197. The trial court agreed that the circumstances of the service did not represent a bar to the action and it granted plaintiff's motion to vacate the arbitrator's decision.

Plaintiff Sargent's efforts to comply with 9 U.S.C. § 12 would qualify for this exception. Depending upon the interpretation of "filed or delivered," plaintiff's motion was anywhere from eight days late to one day

early. The courts dismissing motions for being untimely under 9 U.S.C. § 12 have involved cases where service has been many months or years beyond the three month deadline. *See Witt v. Reinholdt & Gardner, supra* (Plaintiff filed suit to invalidate an arbitration award more than two years after the arbitration proceeding); *Colavito v. Hockmeyer, supra* (November 1983 filing was untimely with respect to an October 1982 arbitrator's award); *Gas Workers Local No. 80 v. Michigan Consol. Gas Co.,* 503 F.Supp. 155 (E.D.Mich.1980) (Proceeding to set aside award was filed eleven months after arbitrator denied request for reconsideration and hence, was untimely); *Pizzuto v. Hall's Motor Transit Co.,* 409 F.Supp. 427 (E.D.Va.1976) (Complaint filed more than twelve months after arbitration of employment grievance was not timely).

2.

In light of plaintiff's attempt to seek a hearing *de novo,* his attorney's failure to file a motion to vacate, the plaintiff's *pro se* status, and his diligent effort to serve his motion within the three month period, along with the different interpretations of "filed or delivered," this Court holds that plaintiff Earnest Sargent's motion to vacate the arbitration award of August 19, 1987, was not time-barred.

B.

■ Regarding the defendants' argument that this Court exceeded it authority in vacating the arbitrators' award, this Court adheres to its original holding that it should not attempt to enforce an award that is ambiguous, indefinite or irrational. *See NF & M Corp. v. United Steelworkers of America,* 524 F.2d 756 (3d Cir.1975) ("If an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated." *Id.* at 760). The Court upholds its position that for judicial review to be meaningful, an arbitrator's award cannot be absolutely immune from scrutiny. *See Siegel v. Titan Industrial Corp.,* 779 F.2d 891, 894 (2d Cir.1985); *Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42,

45–46 (2d Cir.1985); *Cleveland Paper Handlers & Sheet Straighteners Union, No. 11 v. E.W. Scripps Co.,* 681 F.2d 457, 460 (6th Cir.1982) (per curiam) *Oil Chemical & Atomic Workers Int'l Union v. Rohm & Haas Texas, Inc.,* 677 F.2d 492, 495 (5th Cir.1982) (per curiam); *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985); *Shearson Loeb Rhoades Inc. v. Much,* C.A. No. 81–4225 at 8–9 (N.D.Ill, Jan. 3, 1983). These cases were relied upon in the Court's December 8, 1987 Memorandum Order and further research indicates that they are still good law.

When reviewing arbitration awards it is necessary for a court to understand the calculation methods used by the arbitrators. *Siegel, supra,* at 894. The Court is not asking too much in seeking a clarification of the illusionary and ambiguous mathematical calculation utilized in arriving at plaintiffs' $46,000 award. *See Douglas Aircraft Co. v. NLRB,* 609 F.2d 352, 354 (9th Cir.1979) ("It was proper to obtain from the arbitrator a clarification of his reasoning. The original opinion was ambiguous, and indeed the clarified opinion belied the Board's confident interpretation of the original." *Id.* at 354 (citations omitted)). The award represents a fraction of the $256,000 amount which the plaintiffs claim they lost due to defendants' breach of fiduciary duty.

To avoid judicial guessing as to the rationale behind the award and to permit effective judicial review, it was entirely appropriate for this Court to vacate and remand the arbitrators' award for further explanation.

Accordingly, it is this 10th day of May, 1988,

ORDERED

That defendants' motion for reconsideration of this Court's Memorandum Opinion of December 8, 1987, is denied.

This matter is remanded to the NYSE Arbitration Panel for a full explanation of the manner in which damages were computed so as to permit effective judicial review. The panel shall act expeditiously on this matter and file an appropriate memorandum in accordance with the Memorandum Order of December 8, 1987, and this Order, on or before July 1, 1988.